UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case Nos. 3:18-cr-00057-MMD-WGC |
| Plaintiff, | 3:19-cr-00006-MMD-CSD |
| v. | ORDER |
| SHAWN CURL, | |
| Defendant. | |

## I.    SUMMARY

Defendant Shawn Robert Curl is concurrently serving a 72-month sentence for conspiracy to distribute methamphetamine (Case No. 3:18-cr-00057-MMD-WGC ("Case No. 57")) and a 60-month sentence for possession of a firearm by a prohibited person (Case No. 3:19-cr-00006-MMD-WGC ("Case No. 6")) at Terminal Island Federal Correctional Institution ("FCI Terminal Island"). (Case No. 57, ECF Nos. 822, 915 at 2; Case No. 6, ECF No. 69.) He is also sentenced to concurrent three years of supervised release in Case No. 57 and five years of supervised release in Case No. 6. (Case No. 57, ECF No. 822; Case No. 6, ECF No. 69.) Before the Court are Defendant's motions[1] for sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i) based on "extraordinary and compelling" family circumstances—including the worsening health of his children's sole caregiver. (Case No. 57, ECF No. 907; Case No. 6, ECF No. 70 (jointly, "Motion").) For the reasons explained below, the Court will grant Defendant's Motion as to each case

---

[1]Defendant submits the same motion in Case No. 57 and Case No. 6, and Parties' responses are substantially the same across both cases. The Court thus issues this combined Order. Curl supplemented his Motion. (Case No. 57, ECF No. 915; Case No. 6, ECF No. 81 (jointly, "Supplement").) The government opposes his release (Case No. 57, ECF No. 920; Case No. 6, ECF No. 82 (jointly, "Response")), and Defendant filed replies (Case No. 57, ECF No. 925; Case No. 6, ECF No. 86 (jointly, "Reply").) For purposes of this Order, where Parties' arguments and filings are common between cases, the Court will cite to the docket in Case No. 57.

1   and reduce Defendant's sentence to time served. Defendant also moves to file his

2   mother's medical records (Case No. 57, ECF No. 926; Case No. 6, ECF No. 87)[2] under

3   seal. (Case No. 57, ECF No. 924; Case No. 6, ECF No 85.) The Court agrees that Exhibit

4   A contains confidential medical records that warrant sealing and grants his motions to file

5   under seal.

6   **II.   BACKGROUND**

7   On October 7, 2019, Defendant pled guilty to one count of conspiracy to possess

8   methamphetamine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1),

9   841(b)(1)(B)(viii), and 846. (Case No. 57, ECF Nos. 502, 509.) He admitted that he

10  engaged in arrangements on multiple occasions in 2018 to purchase several pounds of

11  methamphetamine from co-conspirators, intending to sell. (Case No. 57, ECF No. 504 at

12  8-12.) Under a combined plea agreement, Curl pled guilty on the same day to one count

13  of possession of a firearm by a prohibited person in violation of 21 U.S.C. §§ 922(g)(1)

14  and 924(a)(2). (Case No. 6, ECF Nos. 31, 40, 42.) He admitted that he knowingly

15  possessed two firearms—discovered on June 14, 2018 during the execution of a search

16  warrant for suspected drug conspiracy—while he also knew that he was a previously-

17  convicted felon. (Case No. 6, ECF No. 40 at 12-15.)

18  On July 27, 2020, the Court sentenced Curl to 72 months in prison and five years

19  of supervised release for the methamphetamine charge and 60 months in prison and

20  three years of supervised release for the firearm charge. (Case No. 57, ECF No. 820;

21  Case No. 6, ECF No. 60.) The Court ordered the sentences to run concurrently. (*Id.*) At

22  the time of this Order, Defendant has served approximately 53 months out of his 72-

23  month sentence, and his projected release date is July 17, 2024. (Case No. 57, ECF No.

24  920 at 3.)

25  On March 3, 2023, Defendant filed this Motion seeking a reduction in his sentence

26  to time served or to home confinement because of deteriorating family circumstances that

27

28  _____

[2]These medical records are attached as Exhibit A to Defendant's reply (Case No. 57, ECF No. 925; Case No. 6, ECF No. 86).

2

make him the only available caregiver for his children. (ECF Nos. 907, 915.) In 2022, during Curl's incarceration, the State took custody of Curl's three minor children. (Case No. 57, ECF No. 907 at 5, 7-8, 14.) The children had been living with their mother, Johnna Webb, who struggles with severe addiction and failed to follow the prescribed custody case plan. (ECF Nos. 907 at 5, 7-8, 14-15, 915 at 2.) The State granted Curl's mother, Pamela Hames, legal guardianship. (ECF No. 907 at 5, 7-8, 14.) Ms. Hames, who is 67 years old, is currently the sole provider for Curl's children. (ECF Nos. 907 at 7-8, 14-15; 915 at 5.) She has multiple serious health conditions, and her health has declined since Curl's children have been in her care. (ECF No. 915 at 6-10.) Ms. Hames suffers from chronic obstructive pulmonary disease ("COPD"), which worsened when she was hospitalized with human respiratory syncytial virus ("RSV") and pneumonia in February 2023. (*Id.*) Ms. Hames is now on a permanent oxygen regimen and has sustained lung damage. (ECF Nos. 915 at 6-10, 926 at 95-99, 124.) She has also been diagnosed with cirrhosis of liver and permanent esophageal obstruction. (ECF Nos. 925 at 3, 926 at 70-72, 74, 84.) Recently, she tripped over her oxygen tank and broke her arm. (ECF No. 915 at 6-10.) Ms. Hames regularly visits a doctor multiple times a week. (ECF Nos. 925 at 3, 926 at 70-72, 74, 84.) In the months prior to Curl's motion, she visited the emergency room multiple times and was periodically unable to enter her car and take Defendant's children to their school and extracurricular activities. (ECF No. 915 at 6-10.) In addition, Curl's 14-year-old son was charged and convicted of an offense in juvenile court in 2022 and is now on probation. (ECF Nos. 907 at 5, 7-8, 915 at 9-10.) During the spring, Curl's son began failing his mandated drug tests, testing positive for marijuana. (ECF No. 915 at 9-10.) Curl's 10-year-old son was also caught at school with marijuana. (*Id.*)

Before his incarceration, Curl intermittently maintained sole custody of his minor children during periods when their mother, Ms. Webb, lacked stability. (ECF No. 915 at 2-3.) During one such period, a court granted Curl custody while the instant offenses were pending, after Ms. Webb was arrested for child abuse. (*Id.*; ECF. No. 720 at 19.) There is

1    no active Department of Health and Human Services case against Curl, and he retains

2    full parental rights. (ECF No. 925-1.)

3    **III.    DISCUSSION**

4         Defendant seeks release under the compassionate release provision of 18 U.S.C.

5    § 3582(c)(1)(A)(i), as amended by the First Step Act ("FSA") of 2018. (Case No. 57, ECF

6    Nos. 907, 915.) This provision offers Defendant a limited exception to the general rule

7    that the Court may not modify or reduce the length of a sentence after the Court has

8    imposed it. *See* 18 U.S.C. § 3582(c); *see also U.S. v. Penna*, 319 F.3d 509, 511 (9th Cir.

9    2003) (explaining that generally a court cannot modify a sentence after it has imposed it).

10   "It allows the sentencing judge to reduce a sentence based on 'extraordinary and

11   compelling reasons' after the defendant has asked the [Bureau of Prison ("BOP")] to bring

12   such a motion on her behalf and exhausted all administrative rights to appeal the BOP's

13   denial of that request." *United States v. Mogavero*, Case No. 2:15-cr-74-JAD-NJK, 2020

14   WL 1853754, at *2 (D. Nev. Apr. 13, 2020) (citing 18 U.S.C. § 3582(c)(1)(A)(i)).

15        The Court follows a three-step process to evaluate the Motion. First, the Court

16   determines if Curl has satisfied the statutory prerequisites under Section 3582(c)(1)(A).

17   Then, the Court evaluates whether Curl has shown "extraordinary and compelling

18   reasons" for the Court to release him under Section 3582(c)(1)(A)(i). Finally, the Court

19   addresses the applicable policy statements and sentencing factors under Section

20   3582(c)(1)(A). The Court "must consider the factors in 18 U.S.C. § 3553(a) 'to the extent

21   that they are applicable,' and any sentence reduction must be 'consistent with applicable

22   policy statements issued by the Sentencing Commission.'" 18 U.S.C. § 3582(c)(1)(A)(i).

23   Here, as there is no dispute regarding the first step, the Court will primarily address the

24   latter two steps.

25        **A.    Statutory Prerequisites**

26        Section 3582(c)(1)(A) requires that a defendant ask the BOP to bring a motion for

27   compassionate release on the defendant's behalf before filing such a motion with the

28   court, normally done by submitting a request to the warden. *See also* 18 U.S.C. §

1   3582(c)(1)(A). In addition, a defendant may only bring a motion under Section
2   3582(c)(1)(A) "after the defendant has fully exhausted all administrative rights to appeal
3   a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse
4   of 30 days from the receipt of such a request by the warden of the defendant's facility,
5   whichever is earlier[.]" *Id.*

6           On January 10, 2023, Defendant submitted a request for compassionate release
7   to the Warden of FCI Terminal Island. (ECF No. 907.) He has not received a response as
8   of the date of the Motion. "The government agrees that the defendant has exhausted his
9   administrative remedies" and that "this Court has authority to address the defendant's
10  motion on its merits." (ECF No. 920 at 6.) The Court finds that Curl has satisfied the first
11  step and will proceed to the other two steps of the analysis.

12          **B.      Extraordinary and Compelling Reasons**

13          Because Curl has satisfied the statutory prerequisites, the Court moves on to the
14  merits of the Motion. The Court finds that Curl's family circumstances qualify as an
15  extraordinary and compelling reason for modification of his sentence to time served.

16          Courts in this District have determined that worsening illness of a defendant's
17  children's sole caregiver, such that the caregiver is no longer capable of providing
18  adequate support, justify compassionate release. *See United States v. Morrison*, 501 F.
19  Supp. 3d 957, 959 (D. Nev. 2020) (granting compassionate release because the current
20  caregiver of the defendant's children, the defendant's 60-year-old mother, "ha[d] spinal
21  stenosis and degenerative disc disease and [was] . . . limited in her physical ability to take
22  care of them"); *United States v. Jamikko Foster*, Case No. 2:19-cr-000117-RFB, ECF No.
23  80 at 2-4 (D. Nev. May 1, 2020) (granting early release after finding that the caregiver of
24  defendant's minor children suffered from chronic lupus, neuropathic pain, and extreme
25  fatigue and was therefore incapacitated).

26          Since Curl's incarceration began, his mother, Ms. Hames, became the sole
27  guardian of his young children. (ECF No. 907 at 5, 7-8, 14.) Ms. Hames' medical and
28  mobility needs severely and increasingly limit her capacity to care for them. (ECF Nos.

915 at 6-10, 926.) Ms. Hames suffers from debilitating COPD, exacerbated by recent complications and medical incidents including RSV, associated pneumonia, cirrhosis, and a broken arm due to her challenges with mobility. (ECF Nos. 915 at 6-10, 926.) While the government contends that her health history is inadequately supported (ECF No. 920 at 8), Defendant has subsequently provided Ms. Hames' medical records to confirm her diagnoses. (ECF No. 926.) These records confirm that Ms. Hames' medical conditions are severe and worsening. At times she has been unable to drive a car or otherwise take her grandchildren to their required activities. (ECF No. 915 at 6-10.) *See also Foster*, Case No. 2:19-cr-000117-RFB at 3 ("[The sole caregiver] is unable to engage in normal and family-sustaining activities including cooking, cleaning and grocery shopping.") Ms. Hames' "ability to grocery shop, cook, and clean were impeded by her breathing capabilities before she developed pneumonia," and has subsequently declined further. (ECF No. 915 at 9.)

A stable and capable caregiver is particularly vital for Curl's 14- and 10-year-old children at this juncture. *See Morrison*, 501 F. Supp. 3d at 959 (considering the heightened needs of a defendant's children in granting early release.) Defendant's 14-year-old son is on probation after a 2022 juvenile adjudication and has already violated its terms. (ECF Nos. 907 at 5, 7-8, 915 at 9-10.) His 10-year-old son has been caught with marijuana. (*Id.*) Ms. Hames is already overwhelmed with maintaining her physical health and cannot provide the kind of consistent supervision and support needed to ensure Curl's children have resources to succeed as they enter their teenage years.

There are no other caregivers reasonably available for Curl's children. The government's argument that Curl's father and stepmother might provide an alternative custody arrangement, merely because they have expressed their willingness to have Curl and his family live with them after his release, is unavailing. (ECF No. 920 at 8.) Curl's father has his own health challenges which would make caring for children alone a challenge, and he lives many hours away from the children's school and probation office. (ECF No. 920 at 4.) Moreover, Defendant has submitted evidence that Child Protective

1    Services does not have an open case against him and that he retains his custodial rights

2    after his release. (ECF No. 925-1.) There is no evidence that family court would be further

3    involved. And despite his domestic violence charges, Curl consistently maintained

4    custody of his children before his incarceration. (ECF No. 915.) He was deemed the "safe"

5    parent for his children when his ex-wife, Ms. Webb, was arrested for abuse, in 2018. (*Id.*

6    at 2.)

7         C.    **Applicable Policy Statements**

8         Under the FSA, any sentence reduction for "extraordinary and compelling

9    circumstances" must be "consistent with applicable policy statements issued by the

10   Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Sentencing Commission has

11   issued a policy statement listing four explicit scenarios that qualify as extraordinary and

12   compelling, which include family circumstances when there is "[t]he death or

13   incapacitation of the caregiver of the defendant's minor child or minor children." U.S.S.G.

14   § 1B1.13(1)(A) cmt. n.1(C)(i).[3]

15        Because Curl has demonstrated the incapacitation of the caregiver of his minor

16   children—a significant development after his sentencing—his early release falls squarely

17   within the Commission's contemplated justifications for sentence modification. The Court

18   therefore finds that extraordinary and compelling reasons for release exist, consistent

19   with Sentencing Commission policy statements, and moves to the third and final step of

20   the analysis.

21   ///

22

23        [3]The Sentencing Commission promulgated amendments to current sentencing
     guidelines on April 27, 2023. *See* U.S.S.C., Amendments to the Sentencing Guidelines,
24   Apr. 27, 2023. These amendments will become effective on November 1, 2023, absent
     action by Congress to the contrary. *See id.* Under the amended § 1B1.13 policy
25   statement, the Commission further broadens the set of "family circumstances" which
     qualify for relief, expanding to death or incapacitation of the caregiver of a defendant's
26   disabled adult child and "incapacitation of the defendant's parent when the defendant
     would be the only available caregiver for the parent." *See id.* at § 1B1.13 cmt. (b)(3).
27   These changes signal the Commission's increasing recognition of care for family
     members as an extraordinary and compelling justification for early release. They also
28   suggest that Curl's opportunity to care for his ill mother upon early release is an
     independent factor favoring modification of his sentence.

**D.     Section 3553(a) Factors**

The Court must next consider the factors set forth in Section 3553(a) to the extent they are applicable. These factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established in the Sentencing Guidelines; (5) any pertinent policy statement issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims. 18 U.S.C. § 3553(a)(1)-(7). As to the Section 3553(a)(2) factor, the need for a sentence must be sufficient, but not greater than necessary, to serve the purpose of "just punishment, deterrence, protection of the public, and rehabilitation." *Dean v. United States*, 137 S. Ct. 1170, 1175 (2017) (citation and internal quotes omitted).

The government primarily focuses its argument as to Section 3553(a) on Curl's underlying offense and criminal history. (ECF No. 920 at 9-11.) It argues that Curl is a danger to the community because he is a repeat offender and his criminal history includes "a pattern of domestic violence, substance abuse, and failing on conditions of supervised release." (*Id.* at 10.) It further argues that Curl's instant convictions are serious because he played a non-minor role in a drug conspiracy, and points to Curl's pretrial arrest for child abuse. (*Id.* at 9-11.) Defendant responds that most of his underlying offenses are from more than a decade ago and relate to his past drug addiction—which he has worked to treat both before and during his incarceration. (ECF No. 925 at 5-7.) He argues that he has taken full responsibility for his current offenses, which were nonviolent. (*Id.* at 5.) And he argues that the circumstances of his domestic abuse charge—revolving around disciplining his child at a baseball game—do not indicate that he is a threat to his children. (ECF No. 915 at 3.)

The Court may consider, among other factors, Curl's "character, physical and mental condition, family ties, employment, financial resources, community ties, past

conduct, criminal history, and drug and alcohol abuse." *See United States v. Parker*, 461 F. Supp. 3d 966, 983 (C.D. Cal. 2020) (citation and internal quotes omitted). While the Court recognizes that Curl's criminal record is indeed concerning, the age of his prior convictions—only one of which was a felony and the majority of which resulted in limited jail time—is mitigating. (ECF No. 925 at 7.) Moreover, courts in this District have granted compassionate release on the basis of similar family circumstances in cases in which defendants are serving sentences for more serious crimes. *See Morrison*, 501 F. Supp. 3d at 958 (granting compassionate release to a defendant who committed six bank robberies, made bomb threats, and absconded with almost $20,000 to allow her to care for her children).

The Court also finds persuasive that Curl has maintained an active role in his children's lives and that the State placed his children in his custody while he was on pretrial release in the instant cases. (ECF No. 915.) Moreover, the Court recognizes that Curl has done significant work to combat his addiction and to gain skills while incarcerated. The government explicitly "acknowledges the defendant's efforts at rehabilitation while in prison and his lack of disciplinary history." (ECF No. 920 at 11.) While in custody, Curl has completed First Step Act programming, including the Nonresidential Drug Abuse Program, and has not had any incident reports. (ECF No. 915 at 13-14.) In addition to therapeutic programming, he has taken a barbering course, an OSHA certification course, and further vocational training courses. (*Id.* at 14.) Prior to incarceration, Curl maintained steady employment as a journeyman roofer. (*Id.* at 11.) He has two proposed release plans to speed his community integration. (ECF Nos. 907, 915 at 11.) Curl is sentenced to five years of supervised release, which will include monitoring to ensure he is not a danger to his community. (ECF No. 915 at 14-15.)

Finally, at the time of this Order, Curl has served more than 70% of his sentence. The Court finds that releasing Defendant to time served, followed by supervised release, sufficiently reflects the seriousness of his offense, provides just punishment, and promotes respect for the law.

1

## IV.    CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the Motion before the Court.

It is therefore ordered that Defendant's motion for sentence reduction (Case No. 57, ECF No. 907; Case No. 6, ECF No. 70) is granted as to both cases. Defendant's sentence in both cases will be reduced to time served.

It is further ordered that the judgment of conviction in both cases be amended to reflect reduction of sentence to time served.

U.S. Probation is further directed to conduct a home visit prior to Defendant's release and make a recommendation to the Court within 30 days of this Order detailing any additional conditions of supervised release, beyond those originally imposed, which it considers appropriate.

It is further ordered that Defendant's motion to file medical records under seal (Case No. 57, ECF No. 924; Case No. 6, ECF No 85) is granted as to both case numbers.

DATED THIS 22nd Day of September 2023.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE